The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is our case number 4-21-0498, People of the State of Illinois v. Byron Merriweather. Would counsel for the appellant please state your name and introduce yourself to the court please. Good morning, your honors. My name is Joshua Bernstein and I represent appellant Byron Merriweather. And for the state. My name is Allison Paige Brooks and I represent the people. Thanks. Thank you. You may proceed. May it please the court. Counsel, as you know, there are two issues raised in my brief. I intend to focus on the first issue, but of course, if your honors have any questions about the second issue, the ineffective assistance claim. I'll be happy to answer them. I'll cut right to the chase here. This case presents an example of what happens when a court imposes a sentence without following the proper procedure. And in this case, the procedure is section 105, 4.5105 of the sentencing code, which requires the court to consider the nine Miller factors when sentencing a juvenile. Mr. Merriweather was a juvenile. He was 17 years old at the time this offense occurred. And as I noted in the brief, the court did consider correctly three of the factors. But the court really kind of went off the rails with respect to the remaining six. First of all, with respect to age, the court identified the obvious fact that Mr. Merriweather is a juvenile. And as a juvenile, he's entitled to this particular sentencing procedure. But the court's words show us that it was more concerned with the fact that Mr. Merriweather fell on the, you know, he was 10 days shy of his 18th birthday, rather than 15 or 16 years old. And the court's analysis really does not go into anything about why being under 18 is important, why this statute exists, why Miller, Graham, Roper, Holman, the whole nine yard, why all these cases have been decided the way they've been decided. And that's because the age is a, the factors that come with the age are immaturity, impetuosity, failure to consider risk and consequences. And the court did not consider, it's one thing to say you're 17 years old. It's another, and because of that I see that you did X, Y, or Z. It's another thing to say you're 17 years old but if this happened 10 days later, we'd be throwing the book at you. So wait a minute, you mean that you can't distinguish between a 15 year old and an almost 18 year old when you're sentencing? Clearly he understands that age is a component of this. And he understands that as you age, hopefully you're less impulsive and you're less, more mature. Now I don't know what the literature shows about the difference between a 15 year old's brain and someone approaching 18, but I don't understand why that's, why that's an issue here. Your Honor, and I apologize, I do not have the case site. The Illinois Supreme Court itself has recognized that the age of 18 is an arbitrary cutoff. And you know, this wasn't brief, but the scientific data raised in Miller, Graham, Roper, you know what, I think it was Buffer even, shows that the juvenile brain continues to mature to some point in your 20s. And that's why we've got all these cases in Illinois in which people are asking for the application of the Miller factors to sentences imposed on 24 year olds and 22 year olds, 21 year olds. So it's not, from the perspective of this statute, it's a binary condition here. Either you're under 18 and the factors apply and the court is obligated to examine where your brain development puts you as far as risk and such things, or you're over 18 and you get these, you know, the sentences. That otherwise applies. So with respect to age, I think it, to me, and I think to the law, it is irrelevant that someone who's 15 and someone who is different from someone who's 17, especially where there's no examination of why his being 10 days from his 18th birthday matters. There were factors that, attributes he had that were a function of his brain development. And that's the problem with the court's invocation of his birthday. And that, of course, is just the threshold issue because what unfolds, you know, with the other factors that the court raised, the peer pressure and the family influence is that, in fact, if you look at the statute and you read the statute serially, you know, A1 through A9, really what it shows is the cascade of effects that age has on a defendant's life. So, you know, with respect to the peer pressure and the family influence, our position, and if it wasn't clear in the briefing, is that the influence of the gangs in this case was overwhelming, was all pervasive. We know that Mr. Merriweather didn't have a father in his life. We know his older brother, Valentino, was a member of the conservative vice lords in Bloomington. We know that Mr. Merriweather dropped out of school in seventh grade, and in fact, as I was preparing for this oral argument, he failed seventh grade and then dropped out. And at the age of 12 or 13, joined the gang. That's pretty close to seventh grade, so it's not like he spent some time trying to get back in school. And all of this illustrates, first of all, that the judge was wrong. I mean, you know, the judge kind of gave a platitude here about how, you know, you have people who have your back, people who are in your life, you know, these kind of things that we all expect in a family. But in fact, the people who were in his life was his older brother, Valentino. His male role model was a gangbanger. His leisure time, his time outside of school, I should say, was spent boosting cars, breaking into people's houses, dealing drugs, getting into fights. So these are all mitigating factors you're now citing to us? I'm not citing, no, that his activities aren't mitigating factors. This is the social milieu in which he existed, Justice Steigman. He, there was no, there was nothing normal about. How does that, how does this recitation of his miserable home situation and everything you've decided or discussed argue for a lesser sentence? If you take the person's peer group, a deviant peer group, and you put him into the circumstances that these adults put him in on that day. Now remember, they started smoking cannabis and drinking around 11 or noon, 11 in the morning or noon on the day of the shooting. And they drank and smoked cannabis all day long until they were kicked out of the park and then came back to the park. So he's in a deviant peer group in which the adults are plying him with liquor and cannabis, and they hand him a gun. And it's not, I'm not saying it's mitigating that he boosted cars or committed burglaries or any of that, but it explains why he is where he is at that moment that he pulls the trigger. You're arguing that these are factors somehow that suggest the trial court abused its discretion in imposing the sentence it did. I'm having trouble finding the connection. No, Your Honor. What I'm arguing is that the court did not consider these factors in mitigation. Well, then the court lists all of the statutory factors in mitigation and talk about them all? Yes, and its words indicated that it would be, this isn't a case in which we're arguing that the court didn't consider a factor. There's no question that the court considered all of the factors here. The question is how the court considered it. And the court's words show that it did not consider these factors in mitigation and explicitly considered some of them an aggravation. For example, the circumstances of offense and degree of participation. No one's arguing that Mr. Merriweather didn't pull the trigger. But it does not reflect the reality of what happened here to say that this 17-year-old who was used by his gang in the way that Mr. Merriweather was used here is not entitled to mitigation. Counsel, some circumstances might be mitigating, but they also might be aggravating. So the court's simply pointing out circumstances of this case are either one or the other or maybe a mix of both. What's wrong with that? I don't understand where you're going with this argument. Well, my argument is that the statute says you have to consider these factors in mitigation. The court said I considered them an aggravation. This is what the Royer case, which we cited, is all about. It's one thing, I suppose, it's one thing to say there's no mitigation here. This was an awful crime. There's no mitigation. It's another thing to say it's aggravating that you chose to go back to the park, that you chose to pull the trigger. And that just does not reflect the reality of a juvenile reacting to pervasive peer pressure for what it had been five years. Now, I don't know what happened in those five years other than his own statement that he spent it in the gang committing crimes. And as the law review article we stated really, I think, points out that the gang lifestyle is all encompassing, it's pervasive, that you do what you do to enhance your status in the gang. And as a young person whose peers are adults, some of them may be in their 30s. It wasn't clear in the record, but he seemed to be saying that some of these people were in their 30s, are telling him to do things, are giving him things, are applying him with drugs. How is that not mitigating? I don't understand. And to say explicitly that it's aggravating for a child to decide to go back to the other park, I think it's not reflected in the record, and it does not reflect the reality of what this evidence shows. Well, the other thing that's not reflected in the record is the ages of the people that had the influence on him. By that I mean to say, something he said, you may think these guys are older bangers, but he could have had three 15-year-olds around him that had been in the gang since they were eight years old, and they were the ones that were influencing. So if you're going to contend that he was used and manipulated and sort of seduced by the marijuana and the alcohol, wouldn't there have to be a better factual background for that? Well, I mean, Your Honor, his testimony is unrebutted, and we know his brother was there, and at a minimum, it's his older brother. And as I understand it, his brother is a couple years older than him. So let's say he's 17 at the time, and his brother's a couple years older. That's 19. And there's no evidence that there was anyone younger there. So in May of 2006, when the defendant was first sentenced for this crime, he received an aggregate prison sentence of 70 years in prison, which included a 45-year term, plus a mandatory 25-year firearm enhancement. When he was resentenced, the firearm enhancement was no longer part of his sentencing. Am I correct that that was the trial judge's choice? And the first question, the second question is, couldn't the trial judge have made it part of the sentence when he resentenced the defendant? One thing I think the judge got right here. Answer my questions first, and then you can go on to comment. Well, I'm answering your question. Yes, the judge had discretion to impose the firearm sentence if he found that Mr. Merriweather was one of the rare, irredeemable, incorrigible youths for whom a life sentence was appropriate. Because of the minimum sentence of 20 years and the 25-year add-on, including the add-on in the sentence, which the judge recognized would have pushed it over the 40-year buffer line, and that would have been considered a de facto life sentence, which would have required a finding of incorrigibility. Wait a minute, didn't the United States Supreme Court in Jones say that the trial court doesn't have to make that finding? Our court has required that finding. Since Jones? Has the Illinois Supreme Court required that finding since the Jones language? You know, I'm drawing a blank, Your Honor. I honestly don't know. Well, I think the answer is no, it hasn't. And I think they mused about how that might cause some change in their thinking. But the point is, the trial court seemed to be alert to these factors. And, you know, it's a strange posture for the defendant to receive the 70-year sentence to now come talking about how awful it is that he got 35 years in D.O.C. after remand for resentencing. Well, I'm sorry you see it that way, Justice. What I see is an improperly conducted sentencing hearing in which the judge did not, you know, he's entitled to a fair sentencing hearing, whether or not it's a 45-year sentence or a 35-year sentence or a 70-year sentence. This is a fundamental right. So the trial court said, I carefully considered all the statutory factors of mitigation and listed them all and said, based on all the evidence presented, I think 35 years in D.O.C. was appropriate. What would your argument be? And that's all he said. What would your argument be? Then I would, depending on if that's all he said, I might be arguing that the judge abused his discretion. But the judge didn't say that in this case. Well, you see, here's the problem. We just had occasion in another case to mention this, how when it's desirable for trial courts to explain their thinking, to explain their exercise of discretion in particular. And if we are analyzing, and this judge here spoke at length about all of this, and if we're going to be taking a phrase here and there, as I put it in a recent case like Talmudic parsing, then the message we're sending to trial judges is keep your mouth shut, because the common enemy is going to be listening to OSAD's argument and finding your musings a basis to reason. How is that good policy, Counsel? Well, Your Honor, I'm slightly offended at Talmudic parsing as an insult, because I've done my share of Talmudic parsing of the Talmud. And I know that the very fundamental aspect of all the jurisprudence in the Talmud is mercy. And I, you know, there's nothing I can do. That's a different aspect of the Talmudic parsing. I'm just talking about picking out a sentence here and there. And your notion of being offended by it is something that I reject, but go ahead with your response. This isn't a sentence here and there, Your Honor. At least three of these factors, the trial court explicitly said they were aggravating. Aggravating. That's three of nine. And with respect to peer pressure and family, the judge downplayed it as if, you know, I don't know, that these weren't mitigating factors. That is somehow, you know, well, you know, we all have a tough life. In seventh grade, I was parsing the Talmud. I wasn't out boosting cars and smoking weed. I mean, I, you know, I don't know what to tell you, Justice Stegman. This is what the judge said. And I agree with you. Judges should feel free to express, and I know they're not required to express their reasons for a sentence, but they should feel free and they should express their reasons for a sentence. And this judge gave us a reason to believe that he committed an error. And I'm sure this judge would say, if I committed an error, I would like someone to point out that it needs to be corrected. And that's all we're asking for, Your Honor. A chance to correct explicit errors in this record that the judge made by considering these as aggravating factors. I saw the two-minute warning. I don't know where we're at on time, but what we're asking for, Your Honors, is either a remand, ideally a remand, for resentencing in this case, in which these factors could be properly considered, or, Your Honors, exercise your discretion as under 615 and reduce the sentence. Thank you. Thank you, Counsel. Ms. Brooks? Thank you, Your Honors. May I please the Court and Counsel? The standard of plain error requires the defendant to show clear or obvious error, and that's a very difficult standard to make. The error is because the defendant did have a chance here and could have taken an opportunity to bring the errors to the Court's attention by filing a motion to reconsider sentence alleging these errors, but by not doing so, therefore, has forfeited them, and therefore, the standard of review is a lot more difficult to meet, clear or obvious errors. So what the defendant, I think, is trying to do is to rely on some of the trial court's remarks, which obviously did not need to be made because the court didn't have to explain its reasoning in such detail. So I think the gist of the argument, though, is the most important part is the defendant's claim here that the three particular factors that are listed as mitigating factors in Section 5-4-4.5-105A, which is, I'll just call them the 105 factors or 105A factors. Those are, in particular, the circumstances of the offense, the defendant's degree of participation and role, and his prior juvenile criminal history. Now, the State would point out that these are things that the judges have always considered for any offender, for whatever they are, either mitigating or aggravating. So what the defendant refers to this sort of the age 18 barrier as being a binary, to keep that in mind in terms of what exactly did the legislature intend by passing this statute, the 105A factors, and the fact that the defendant might fall either a day or a few days on either side of that line, would something that is inherently mitigating, for example, the defendant's prior criminal history, be mitigating if, I'm sorry, it's inherently aggravating if he was an adult? Would it become inherently mitigating if he was two days younger than 18, for example? Or if he committed the crime when he's two days older than 18, now that those are substantially aggravating? So when ascertaining legislative intent, it's important to keep in mind to avoid absurd, unjust, and inconvenient results. So something like the circumstances of the offense, they could be very heinous, or they could be where the defendant had things that just happened very quickly. And so in here, it's like a situation where he either had the gun on him already, and the fight happens, and he's got a few seconds to decide, and he shoots somebody on somebody else's instructions, or here where they actually consciously left, came back with a gun. So the judge can say, well, that's more aggravating for those circumstances than if he already had the gun and never left and came back with a gun. So distinctions like that are always made by the judges in deciding the circumstance of an offense, in any offense for any offender. So the fact that they're listed in the statute doesn't mean that circumstances, no matter how heinous, can ever be viewed as aggravating for a minor who committed an offense under age 18. The question is, here the judge must view the mitigating parts of these circumstances, the offense or the defendant's role, a degree of participation, or his lack of prior history as mitigating. But the key part here is to figure out what the legislature meant is to look at subsection A9. And subsection A9 says that any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. But here's the important part. And among this list of aggravating factors, the legislature also says that if the person on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor. So we have the words aggravating factor and amidst the words, the list of mitigating factors. So it's obvious here that, like, for example, subsection A8, the person's prior juvenile or criminal history. There's nothing in there that says the legislature cannot consider this as an aggravating factor. The legislature knows full well how to do so because it did so in A9 when it says the lack of an expression of remorse on advice of counsel if he chooses not to make a statement shall not be an aggravating factor. So the legislature knew how to do this, but they didn't say that, for example, the defendant's prior criminal history cannot be used as an aggravating factor. So if a defendant is getting in fights, dealing drugs, breaking cars, and breaking houses, if he's a few days under 18, that's not a mitigating factor. If he's a few days over 18, and obviously under section 5-5-3.2B, it's the, I'm sorry, 5-5-3.2A is a mitigating, sorry, is an aggravating factor for the prior criminal history. And so there's no, the reason here is I'm saying is that the legislature did not intend this section as an exception. It's somehow overruled for defendants who are under 18 at the time of the offense to say that section 5-5-3.2A aggravating factors don't apply or that the judge doesn't have the inherent authority to consider the circumstances of the offense no matter how aggravating they would otherwise be for any defendant of any age. So, for example, here, the fact that defendants rule in the offense, you know, he pulled the trigger. Well, if he was over 18, he would get a 45-year minimum because the 25-year add-on, which he did not get in this case, because that's something that is, can be taken away from a defendant who was under age 18 at the time of defense. So, obviously, his rule is significantly aggravating if he were over 18. So why is the fact that he is a trigger man for this offense somehow mitigating? So that's why these things can be considered as aggravating to the extent they are inherently aggravating, but must also be considered mitigating to the extent they are inherently mitigating. So, like the Royer case, upon which the defendant relies, the defendant and Royer's family home environment, that something would be more inherently mitigating. It's not like the circumstances of the offense that can be heinous or defendants rule in the offense, which he could be a mastermind or a trigger man or something like that, or have a prior history where the defendant could be on, like, in this case, I think the judge remarked his third felony. So that's something that would be aggravating for any other offender, and it would be unjust or absurd to say that the legislature intended that that fact to be mitigating just because the defendant happened to be so many days under age 18 at the time of the offense. Ms. Brooks, let me ask you a question. Let's suppose we have a brand new lawyer that goes into a firm and a senior partner, well thought of, well recognized, even perhaps famous among the bar, does something that is really an old folk tale. The young man falls under the sway of the older partner, or the young woman falls under the sway of the older partner, and they engage in corrupt activity, which is also criminal. Would a trial court take into account that the younger person, even though of age and well educated, could be led astray by an older, more powerful person. Yes, and the court would always have the ability to consider all the circumstances of the offense. Yeah, we all kind of know that, but I'm asking about that specific factor. Yes, we worry, you know, adults don't want freshmen girls or boys going out with senior boys or girls. But at the same time, Mr. Bernstein tells us there's not, you know, it's the question is, are they under 18? Well, tradition is you don't particularly want 14 year olds fooling around with 17 or 17 year olds, whether it's a male female mix or whether it's just boys will be boys or girls will be girls. Is it okay to take that into account that you're swayed by older people? Yes, yes, everything would be taken into account. And I think that would be a good policy to take everything into account. I think it's a wonderful policy. That's a good answer. But I'm trying to make the point perhaps differently than Mr. Bernstein that those circumstances, if viewed properly by the court, could lead a sentencing court to treat that person somewhat more favorably. But at the same time, those circumstances could lead that court to consider them potentially aggravated. And I think that's your position. Would that be the case? It depends on the judge and it depends on the circumstances. You can view them as mitigating or you view them as aggravating. Well, that's what I said, the Heider case is that there's certain things like the mental retardation of the defendant and was the words they used in that case of the defendant in Heider, which they said there were some aggravating parts of that, although it was only listed as a statutory mitigating factor. But that doesn't mean that a defendant who has a certain condition that doesn't make them in some respects more dangerous because of their condition. So I'm saying is everything sort of maybe have a possible double edged sword. You know, so it's not like something is only inherently mitigating or something is only inherently aggravating. There may be aggravating and mitigating parts to any sort of situation. I think this court has spoken on that in regard to mental retardation. But it's a double, it can be a double edged sword at sentencing. Right. And so the peer pressure here, the fact that he has an older brother in the gang, people handing him guns, telling him what to do, saying to handle the situation. Those are mitigating. And here the question would have to be if the judge did not consider things that were in the record that were mitigating factors that were presented to him or to the judge. I mean, the point is the defendant would have to show clear, obvious error that overcome with affirmative showing that the presumption that the judge considered all of the factors presented. And obviously they recited the factors, the judge recited the factors that somehow some of the evidence was overlooked or something. You have to have some sort of, because it has to be clear, obvious, and they have to overcome a presumption that everything was considered. And so based on the judge's remarks, it's not something that the defendants met their plain error burden of establishing a clear, obvious error on this record. And one of the things I think they were mentioning is like whether there was evidence of immaturity or impetuosity, the fact that somehow the judge reduced the defendant's age to chronological. Well, I think they're also complaining that the defense attorney didn't adequately present evidence of the defendant either being immature or impetuous at the time of the offense and then making that a claim of ineffective assistance of counsel. Well, so if the evidence is not presented, then that's not something the judge can erroneously fail to consider because there was no evidence of that, for example. And if it's an issue of ineffective assistance, then they have to show that that evidence exists and on a record on appeal. If it's not in the record on appeal, then that's something they would have to present on a post-conviction petition because this court is bound by the limitations of the record on appeal. And when deciding a claim of ineffective assistance of counsel raised on direct appeal, it's very difficult to make that showing without record showing of like what evidence wasn't presented. Why? Because it's not in the record. Therefore, this court has no basis of saying, well, of course, the defendant was impetuous and immature and here's the evidence for it. But that's not in the record. So the defense is going to have to put that in a post-conviction petition to the extent it might exist. And then so this the defendant is sort of preserve that issue for post-conviction review. And to the extent then this court can just simply defer consideration of that to post-conviction proceedings. And those are the extent of my remarks. I'm just going to say it's a defense strategy. I'm sorry. Also, I don't think the defense really talked about the ineffective assistance much, but I think it was a strategy. For the defense to sort of say that not to talk about what the defendant's psychology was at the time of the shooting, but to simply look at his successful what they termed as a successful rehabilitation and argue for the 20 year minimum sentence on the basis of that argument. And that seemed to be a very sound strategy to the extent that he didn't get a 20 year sentence. That's not because of defect in the strategy. But that was a sound strategy because they had substantial evidence of the defendant's efforts at rehabilitating himself while he was in prison, despite facing a 70 year sentence at the time. So that is very commendable of him. And that seemed to sound strategy for the defense not to just go back and try to dig up evidence of the defendant's psychology at the time and simply say that a lesser sentence would be warranted because he has been in fact successfully rehabilitated in their view. So that was a sound strategy. And that's one reason just to simply dismiss it, or I'm sorry, reject the claim of ineffective assistance. I asked the defense counsel about the mandatory 25 year firearm enhancement that was imposed initially and was not imposed on resentencing. What are your thoughts about that? Well, to the extent that statute says in Subsection 105B, indiscretion may decline to impose it. It could just simply just be a matter of discretion. I'm not sure exactly from the record what the reasons were for that exercise of discretion. But to the extent that this defendant is not incorrigible, was not incorrigible at the time of the offense. So it seems like it would be inappropriate to put him into a 45 year minimum that would have made it a de facto life sentence to the extent that there's no claim that that was an abuse of discretion to withhold the firearm enhancement. And so that would be the extent of my arguments. If I entertain other questions, I request the court to affirm. I see no other questions. Thank you for your argument. We'll hear from Bernstein and Rebuttal. Briefly, Your Honors. Thank you. Section 105 and youth isn't a double edged sword like mental retardation. It's a shield. This statute is a shield. And the judge in this case turned at least three of the factors explicitly into weapons, into swords. And that's that's the relief we're asking for. It's a great analogy by counsel and the double edged sword would be, you know, any sword would be protected against by 105. There's this idea of the presumption that counsel brought up and that, you know, related to the ineffective assistance argument. The record in this case, the facts of Mr. Merriweather's youth, his family history, the peer pressure and influence all show all cascade into the degree of participation, his criminal history, undoubtedly, and the circumstances of the offense and would mitigate those. You know, counsel kind of glibly says, well, the judge can consider X, Y and Z as as mitigation or aggravation. Royer stated that treating a mandatory mitigating factor, by the way, one of five says you must treat these as mitigation and talk about Talmudic parsing the language of 105 A9 says, you know, and you should consider an expression of remorse as mitigating. But if the defendant chooses not to speak, then you can't treat it as aggravating. What the court is what the legislature is saying and what they knew full well is that if the defendant sat there mom and didn't say anything, if Mr. Merriweather slammed up and not expressed his remorse, there are courts that would otherwise treat that as aggravation. This isn't like a, you can treat remorse as aggravation or mitigation. No, all of these factors are mitigating. The one thing that's in the defendant's control at the sentencing hearing is a nine, an expression of remorse. And if he doesn't give an expression of remorse. You can't hold that against him. That's, that's what that statue saying it's not saying that somehow like the rest of this statute, you know, it's either mitigation or aggravation. So I just wanted to be sure to get that on the record as well. As far as relying on the court's remarks, as counsel said, you know, the court's remarks give us everything we need to know the evidence at at this hearing showed at least a minimum of mitigation. The mitigating factors that I've talked about repeatedly. Now, as far as counsel's ineffective assistance, Dr Killian's report is a forensic psychiatric evaluation, it's gotten very little next to nothing to do with what Mr. At the time he pulled this trigger, and we all know it's in Holman was that 2017 was four years and five years ago, the Supreme Court said this is a backward looking. You look at what the defendant was thinking, at the time this crime was committed was he like a child was, was his brain development like a child, and Dr Killian's report is like prima facie evidence as far as I'm concerned have been effective assistance, because there's enough in the rehabilitation. And I'm not saying counsel shouldn't have argued rehabilitation. What I'm saying is, counsel should have put in evidence and testimony about these other factors that went virtually on address at this hearing, and I commend Mr Merriweather for his rehabilitation in Menard. That's not a small thing. And he's got a chance to have a productive life, but counsel had a job to do. And that job was to make sure that all of these factors were properly presented to the court and I think counsel misunderstood, based on Dr Killian's report, and what Dr Killian says he was didn't understand what one of five is all about. So, unless your honors have any other questions. I'm asking you again to reverse remand and order a new sentencing hearing for Mr Merriweather, so you can really prove exactly how mitigating the circumstances were that the court found aggravating, unless your honors have any questions. I thank you for your time. I see no other questions. Thank you for your argument. We'll take this matter under advisement and await the readiness of our next case. Thank you.